William BALTZ, an individual and Wonder Products Company, a Tennessee corporation, Plaintiffs,

v.

WALGREEN CO., a corporation, Defendant.

Civ. A. No. 3640.

United States District Court
W. D. Tennessee, W. D.
July 7, 1961.

Benjamin H. Sherman, Anthony R. Chiara of Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., Charles G. Black, Memphis, Tenn., for plaintiffs.

William W. Goodman, Morris L. Strauch, Memphis, Tenn., Thomas J. Byrne, Jr., New York City, Thomas J. Barton, Chicago, Ill., for defendant.

BOYD, Chief Judge.

This matter came on for hearing on June 28, 1961, on the sworn petition of plaintiffs, William Baltz and Wonder Products Company, for an order punishing Walgreen Co. for civil contempt of this Court, and the Court having considered the sworn petition of plaintiffs, the exhibits, oral testimony, testimony taken on deposition, and defendant's Answer in opposition thereto, and having considered the admissions of defendant, and briefs of the parties and having heard arguments by both parties, and being fully advised, the Court makes the following:

### Findings of Fact

1. On December 15, 1959, this Court entered a Final Judgment, by consent of the parties, enjoining defendant, Wal-green Co., its employees and privies from making, using, selling or offering for sale any spring-suspended hobby horses embodying the inventions disclosed and claimed in U. S. Letters Patent No. 23,-849 and No. 2,758,632.

2. Defendant, through its house counsel, Mr. Thomas J. Barton and its purchasing agent, Mr. Steven Marchetti, have had full knowledge of said injunction since its entry in December, 1959.

3. Within three months after the entry of said injunction, defendant shopped for a competitive spring horse and Messrs. Marchetti and Lucas called upon De Luxe Game Corporation, a New York corporation, in March 1960, at De Luxe's New York showrooms and immediately commenced negotiations for a special indemnity agreement to defend Walgreen Co. and save it harmless from all patent infringement claims, suits and damages resulting from the contemplated purchases.

4. On May 2, 1960, prior to the purchase of any hobby horses from De Luxe Game Corporation, said De Luxe Game Corporation for the purpose of inducing defendant to purchase and sell its said hobby horses, furnished and delivered to defendant an indemnity agreement undertaking to defend and indemnify defendant, and to save it harmless from all claims of patent infringement and to pay any judgment rendered against defendant, costs, attorneys' fees and other expenses resulting therefrom.

5. Subsequent to the entry of said injunction, defendant, Walgreen Co., has sold and offered for sale, spring suspended hobby horses, Models 551 and 58 manufactured by De Luxe Game Corporation, within this District and elsewhere in the United States.

6. Said De Luxe Game Corporation hobby horses Models 551 and 58 are identical in structure, function and operation and the full equivalent to the original devices adjudicated in this suit (Pltfs. Ex. 6) in relation to the patents in suit, and the sale of said De Luxe models 551 (P. Ex. 25) and 58 (P. Ex. 30) by defendant was in violation of said injunction

issued December 15, 1959 and infringed said U. S. Patents Re. 23,849 and 2,-758,632.

7. The Court has examined the accused structures made by De Luxe Game Corporation and sold by Walgreen Co. subsequent to December 15, 1959, identified as Models 551 and 58 and known as "Pinto Pete" and "Golden Charger", respectively, and has compared said devices with the structure adjudicated in the Final Judgment of December 15, 1959, manufactured by Tremax Industries, Inc. and known as the "Black Fury" and each of said structures include the same combination of the same elements, to wit: (1) a base, (2) uprights secured to said base, (3) plates, or clevises, secured to the uprights, (4) coil springs connected by said plates or clevises to said uprights, (5) an artificial horse, and (6) plates or cross-bars secured to said horse to extend at right angles thereto, with said springs connected to said cross-bars at an angle thereto and adapted stably to support said horse thereby with relation to said uprights, as set forth in the specification of the Baltz patent Re. 23,849 to accomplish the action and bring about the results described therein; said accused De Luxe horses are the full equivalent of the said adjudicated structure, in relation to said Baltz patent, and infringe the claims of said patent.

8. The Court has examined the base stands, or frames, of said accused structures, De Luxe Models 551 and 58, and has compared the same with the base stand, or frame, of the adjudicated structure, the Tremax horse "Black Fury", and finds that said accused base stands are not only the full equivalent of the base stand of the adjudicated structure in relation to the Kohler et al. improved base Patent No. 2,758,632, but are identical patentwise, and each is comprised of (1) a pair of identically configurated frame means or are comprised of four sections which when assembled constitute a pair of identically configurated frame means, (2) each having upstanding end portions, and (3) an intermediate portion laterally offset having inwardly inclined regions adjacent the end portions, and (4) medial parallel portions, and (5) bolts or means to secure the frame sections together at the medial portions, (6) with each inclined region being in a line offset from a diagonally opposed inclined region, all providing a stable base; and accordingly said accused base stands infringe the claim of said Kohler Patent No. 2,758,632.

9. Defendant, through its purchasing agent Steven Marchetti, in the sale of said infringing devices subsequent to the injunction, relied entirely upon the security or immunity to be afforded by said indemnity agreement without regard for the terms and provisions of the injunction of this Court.

10. Defendant states that it did not bother to compare the De Luxe Game Corporation hobby horses with the original adjudicated structures; nor did the purchasing agent Mr. Steven Marchetti obtain the opinon of defendant's own house counsel although they both have offices within defendant's same premises in Chicago; nor did defendant seek the advice of patent counsel as to whether the De Luxe Game Corporation hobby horses infringed plaintiffs' patents or otherwise came within the injunction of this Court.

11. Even after being advised by plaintiffs' attorney of the violation of the injunction in November, 1960, and discussions with plaintiffs' sales representatives on December 9, 1960, and subsequent to the filing of the contempt petition herein by plaintiffs, defendant was defiant and continued to sell said accused hobby horses and to violate the injunctional order.

12. Defendant failed to use any care to avoid other infringements subsequent to the entry of the injunction.

13. Defendant knowingly and wilfully disobeyed and violated the injunction order of this Court subsequent to December 15, 1959.

14. At the time that De Luxe gave the indemnity agreement of May 2, 1960 to Walgreen, De Luxe was itself party to a

pending infringement suit in New York involving the Baltz and Wonder patents and was generally informed of the various suits wherein the Baltz patent had been found valid and infringed and knew, or should have known, that the indemnity agreement was sought because of and directed to the Baltz and Wonder patents.

15. De Luxe Game Corporation, a New York corporation, in conformance with said indemnity agreement (P. Ex. 1), is and has openly assumed, supported, aided and controlled the defense of these contempt proceedings, and since the filing of Plaintiffs' Contempt Petition, prepared, furnished and filed defendant's Answer, controlled all discovery proceedings, attended and directed all depositions, prepared, argued and controlled various motions, attended and directed the trial for defendant in this Court, and conducted and controlled all other steps and acts of the defendant in the defense of these contempt proceedings through De Luxe Game's own attorney, Thomas J. Byrne, Jr., and has paid or has undertaken to pay all expenses, costs and attorneys' fees in connection with said defense.

16. Said De Luxe Game Corporation is and has been in privity with Defendant, Walgreen Co., in relation to the matters and issues of this contempt proceeding.

17. This Court has jurisdiction over the parties and the subject matter and this is a proper venue.

## Conclusions of Law

1. The equities in this proceeding are found to be with the plaintiffs and plaintiffs should prevail over defendant.

2. The plaintiffs have sustained their burden of proof and should prevail over the defendant.

3. This Court has statutory authority to punish defendant for contempt of its injunctional orders under the provisions of 18 U.S.C.A. § 401.

4. This Court has statutory authority to grant relief and to award damages, costs, attorneys' fees and expenses, and to treble said damages, against defendant for violation of an injunction in a patent infringement case as provided under 35 U.S.C. §§ 283, 284 and 285.

5. In a contempt proceeding for violation of an injunction against infringement, the question is whether the accused structure is equivalent to the original in relation to the patent in suit.

Wadsworth Electric Mfg. Co., Inc. v. Westinghouse Electric & Mfg. Co., 6 Cir., 1934, 71 F.2d 850, 851, 852, certiorari denied Wadsworth Electric Mfg. Co. v. Sachs, 294 U.S. 724, 55 S.Ct. 552, 79 L. Ed. 1255.

Kiwi Coders Corporation v. Acro Tool & Die Works, 7 Cir., 1958, 250 F.2d 562, 568.

6. The validity of plaintiffs' patents Re. 23,849 and No. 2,758,632 and the scope of the claims have been determined between the parties and such issues are *res adjudicata*.

7. The accused structures sold by defendant and made by De Luxe Game Corporation (Models 551 and 58) are fully equivalent to the original adjudicated hobby horses in relation to the patents in suit, and are comprised of the same elements used in the same combination to perform the same function in the same way and accomplish the same results. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 1950, 339 U.S. 605, 608, 609, 70 S.Ct. 854, 94 L.Ed. 1097.

8. The sale of said Models 551 and 58 by defendant violated the injunction order and constituted infringements of plaintiffs' Patents Re. 23,849 and No. 2,758,632.

9. It was incumbent upon Defendant to exercise care in avoiding further infringement, and where it shortly entered upon another infringing practice, it is guilty of a real contempt of this Court. Blair v. Jeannette-McKee Glass Works, 3 Cir., 1908, 161 F. 355, 358. National Rejectors, Inc. v. A. B. T. Mfg. Corp., 7 Cir., 1951, 188 F.2d 706, 710, certiorari denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626.

10. Defendant made its private determination of the law relating to the injunction and acted at its own peril. United States v. United Mine Workers of America, 1947, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884. Minnesota Mining and Manufacturing Co. v. Neisner Bros. Inc., D.C.Ill.1954, 122 F.Supp. 752, 755.

11. Defendant knowingly and wilfully violated the injunction order of December 15, 1959 and is guilty of civil contempt.

■ 12. Where a corporation other than the defendant of record, openly defends, supports, assumes and/or controls the litigation, it is in privity with the defendant and is bound by the judgment. Beyer Co. v. Fleischmann Co., 6 Cir., 1926, 15 F.2d 465. Reo Motor Car Co. v. Gear Grinding Machine Co., 6 Cir., 1930, 42 F.2d 965, 967. Baltz et al. v. Botto, D.C.W.D.Tenn., W.D.1956, 147 F.Supp. 468, 476; 139 A.L.R. 9. Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 1941, 120 F.2d 82, 84, 139 A.L.R. 1.

Souffront v. La Compagnie Des Sucreries, 1909, 217 U.S. 475, 487, 30 S.Ct. 608, 612, 54 L.Ed. 846.

"The case is within the principle that one who prosecutes or defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment, and as fully entitled to avail himself of it, as an estoppel against an adverse party, as he would be if he had been a party to the record. Lovejoy v. Murray, 3 Wall. 1 [18 L.Ed. 129]."

Schnell v. Peter Eckrich & Sons, Inc., 1961, 365 U.S. 260, 262, 81 S.Ct. 557, 559, note 4, 5 L.Ed.2d 546:

"It is conceded that Allbright-Nell, by openly controlling the defense of this suit, in which it has an interest, will be bound by the final judgment and precluded by *res judicata*, from relitigating the same issues. Souffront v. La Compagnie Des Sucreries De Porto Rico, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846; Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129."

13. It is proper to enter a finding of privity and facts of record thereof upon the face of this judgment order. N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co., 6 Cir., 1928, 25 F. 659, 665. Brock v. Brown, D.C.Md.1956, 138 F.Supp. 628, 639. Aghnides v. S. H. Kress and Co., D.C.N.C.1956, 140 F.Supp. 582, 587. Souffront v. La Compagnie Des Sucreries, 1910, 217 U.S. 475, 487, 30 S.Ct. 608, 54 L.Ed. 846.

14. De Luxe Game Corporation, a New York corporation, is in privity with Defendant, Walgreen Co., and is bound by this judgment.

15. Where defendant violates an injunction against further infringement of the patents, in addition to a fine, plaintiffs are entitled to an accounting of damages and profits resulting from the subsequent infringement, the tripling of such damages, together with the attorneys fees and all costs and expenses in bringing the contempt proceeding. Leman v. Krentler-Arnold Hinge Last Co., 1931, 284 U.S. 448, 455, 52 S.Ct. 238, 76 L.Ed. 389. Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 1934, 71 F.2d 850, 851. Mueller v. Campbell, D.C.Ohio 1946, 68 F.Supp. 475, 485. Hayslip v. Textag Co., D.C.Ga.1950, 94 F.Supp. 425, 428.

■ 16. Plaintiffs are entitled to the award of a permanent injunction restraining defendant, its employees, agents, officers and all those in privity or acting in concert with defendant from further infringement of said Patent Re. 23,849 and No. 2,758,632 and to an accounting against defendant for defendant's profits, general damages occasioned by defendant's subsequent infringement and violation of the injunction order in an amount not less than a reasonable royalty, interest and costs.

17. The Court reserves any question concerning the awarding of triple damages, attorneys' fees and other expenses and costs until after a determination of profits and damages.

18. On June 8, 1961, plaintiffs served upon defendant and filed herein their Request For Admissions Under Rule 36, 28 U.S.C.; the Record shows and defendant admitted that no sworn statement of denial or setting forth reasons why defendant could not truthfully admit or deny were served upon plaintiffs or filed with the Court herein within the required time nor ever served or filed, and no written objections thereto were ever served or filed; accordingly, each of the matters of which an admission was requested is deemed admitted. (28 U.S.C. Rule 36 Federal Rules of Civil Procedure)

### Judgment Order

Wherefore, it is ordered, adjudged and decreed that the said defendant, Walgreen Co., is guilty of wilful civil contempt of this Court for having failed and refused to obey its Final Judgment and Injunction of December 15, 1959.

1. That Defendant, Walgreen Co., purge itself of its contempt of this Court by taking the following action:

(a) Fully comply with all of the provisions of the Court's Final Judgment and Injunction of December 15, 1959;

(b) That Defendant, Walgreen Co., its employees, servants, agents, privies, and all persons, firms and corporations claiming by, through or under them, or in act of concert or participating with them, cease and desist from making, using, selling or offering for sale, in any manner whatsoever, said hobby horses Models 551 and 58, and any other spring-suspended hobby horses substantially equivalent thereto or in any manner whatsover embodying the inventions disclosed and claimed in said Letters Patent Re. 23,849 and No. 2,758,632, or from infringing upon said patents in any other way, for the respective lives of said patents.

(c) That Defendant, Walgreen Co., make an accounting of and pay to plaintiffs all profits received by defendant by reason of said infringing sales, and pay to plaintiffs general damages in an amount not less than a reasonable royalty, all costs and interest, and that plaintiffs shall have judgment and execution against the defendant for said amount when determined.

2. This Court reserves the question of increasing said award of damages as provided by statute and the award of attorneys' fees and other costs and expenses until after a determination of profits and damages has been made, or until the further order of this Court.

3. The parties are ordered to immediately make available to each other any records which will disclose or reflect information concerning said profits, royalties and costs.

4. In the event that the parties do not submit to the Court agreed total amounts of profits, royalties and costs for entry of judgment according to this order, by July 10, 1961, then upon notification to the Court, this case shall be referred to a Special Master, to take and report an account of said profits realized by defendant, and said damages sustained by plaintiffs by reason of said infringement and violation of said injunction in an amount not less than a reasonable royalty, to assess the same, and to ascertain and report the amount thereof, plus costs and interest to the date of the Master's report; and the Defendant, Walgreen Co., its officers, agents, clerks, employees, and parties in privity with defendant are directed to attend before said Special Master from time to time as he shall direct, and to produce before him all such books, papers, vouchers, documents and devices and to submit to such oral examination as he may direct.

5. De Luxe Game Corporation, a New York corporation, is in privity with defendant and is bound by this judgment and findings.