434 F.2d 1216
 168 U.S.P.Q. 129
 AMERICAN SAINT GOBAIN CORPORATION, Plaintiff-Appellee,
v.
ARMSTRONG GLASS CO., Inc., Defendant-Appellant.
AMERICAN SAINT GOBAIN CORPORATION, Plaintiff-Cross Appellant,
v.
ARMSTRONG GLASS CO., Inc., Defendant-Cross Appellee.
 Nos. 20194, 20229.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1970.
 
 Berg A. Terzian, New York City, Robert J. Kadel, Pennie, Edmonds, Morton, Taylor & Adams, New York City, on the brief; Ernest F. Smith, Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, Tenn., Satterlee, Warfield & Stephens, New York City, of counsel, for American Saint Gobain Corporation.
 Edwin M. Ludeka, ,Knoxville, Tenn., Paul E. Hodges, Knoxville, Tenn., Ferdinand Powell, Johnson City, Tenn., on the brief; Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., Epps, Powell, Weller, Taylor & Miller, Johnson City, Tenn., of counsel, for Armstrong Glass Co.
 Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 Armstrong Glass Co., Inc. (Armstrong) has appealed from an order of the District Court adjudging it guilty of contempt of court for violating the injunctive provisions of a consent judgment which was entered in a patent infringement action and which assessed a remedial fine against it in the amount of $48,722.
 
 
 2
 American Saint Gobain Corporation (American) was the assignee of the Bundy patent, U.S. Patent No. 3,273,706, on a pallet-like package for containing glass sheets stacked vertically, side by side, to form a bundle. An end cap with a lower transverse crossrail is provided at each end of the stacked glass sheets, and steel bands are installed around the two end caps, bringing them into pressure contact with the ends of the bundle and forming a strong, rigid, cubical package. The transverse crossrails support the bundle and make possible the use of a forklift for lifting and transporting the package.
 
 
 3
 American and Armstrong were competitors. American sued Armstrong in the District Court for infringement of the Bundy patent, seeking injunction, damages and other equitable relief.
 
 
 4
 The parties entered into a written stipulation whereby it was agreed that the Bundy patent, owned by American, was valid and was infringed by Armstrong, and that a consent judgment should be entered by the Court permanently enjoining Armstrong from further infringing the patent by making, using or selling glass pallet packages such as described and claimed in the patent. American waived any claim for damages for past infringements. The District Court entered the consent judgment pursuant to the stipulation.
 
 
 5
 Several months later American filed a petition in the District Court charging that Armstrong, in violation of the injunction, had continued to infringe the Bundy patent, and prayed for an order requiring Armstrong to show cause why it should not be adjudged guilty of contempt of court and required to pay damages amounting to not less than a reasonable royalty. An order to show cause was issued by the Court and served on Armstrong.
 
 
 6
 Armstrong filed an answer alleging that the glass pallet package which it was making and using did not come within the scope of the claim of the Bundy patent. An evidentiary hearing was conducted in the District Court. Armstrong's Vice President Silvers testified:
 
 
 7
 Q. Would you answer the question, now, which I asked before, namely, the only modification that you made of the device which you agreed to be an infringement was that you added this chipboard or insulating board and inserted it between the rail and the bottom edge of the glass sheets?
 
 
 8
 'A. It would be correct to say the only modification we made was to elevate the glass sheets above the rail on a suitable bottom.'
 
 
 9
 The 'suitable bottom' was a wooden board; Armstrong also inserted another wooden board on one side of the package, naming it a gate.
 
 
 10
 There was evidence that the use of cushioning material between contacting glass and wood surfaces was an old and obvious expedient in the art and that fiberboard material and cardboard or corrugated paperboard had been used interchangeably.
 
 
 11
 The use by Armstrong of two nonfunctioning wooden boards added nothing to the Bundy invention which the patent examiner found resided 'in a package of a bundle or bundles of upright glass sheets held together by means of pressure contacting end caps and straps only and said end caps having secured thereto crossrails and elevating means so that the fork of a lift can be inserted thereunder.'
 
 
 12
 The District Court found that the accused device was identical with the patented invention, 'performing substantially the same function in substantially the same way to accomplish the same result.' Cf. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607-610, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).
 
 
 13
 Armstrong may not avoid infringement of a valid patent by the insertion in the patented device of two wooden boards provided merely for cushioning purposes.
 
 
 14
 The use of the word 'only' by the patent examiner indicated that the bundle of upright glass sheets was held together solely by reason of pressure-contacting end caps and straps which, together with the other features, constituted a patentable invention over the prior art.
 
 The District Court further found:
 
 15
 'The use by the defendant Armstrong of its aforementioned glass pallet packages violated the injunction of this Court herein and subjects the defendant to penalty for contempt. 18 U.S.C. 401. After having admitted infringing the plaintiff's patent, the defendant blatently commenced another infringing practice while proscribed from such infringement by this Court.'
 
 
 16
 The consent judgment constituted an adjudication that the patent was valid and infringed. It was necessary for the District Court to determine only that the presently accused device infringes the claim of the patent. Hirs v. Detroit Filter Corp., 424 F.2d 1040 (6th Cir. 1970).
 
 
 17
 A review of the record convinces us that there was substantial evidence before the Court to support the finding of infringement and that it is not clearly erroneous. It is therefore binding on us. FMC Corp. v. F. E. Myers & Bros. Co., 384 F.2d 4 (6th Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968).
 
 
 18
 The District Court, pursuant to a stipulation of the parties, referred the issue of damages to a Special Master for determination. The Special Master determined the amount of royalty for the period of the infringement by comparing the cost of the accused device with the cost of a noninfringing device also used by Armstrong, and arrived at $12,074. The savings per square foot of packaged glass amounted to $0.0045. American was at least entitled to a reasonable royalty. 35 U.S.C. 284. In our opinion the royalty determined by the Special Master and approved by the Court was reasonable. The royalty was trebled to $36,222 under the provisions of 35 U.S.C. 284.
 
 
 19
 The District Court affirmed the Special Master's Report and allowed American $12,500 for attorneys' fees. It entered judgment against Armstrong for the total amount of $48,722, which was the amount of the remedial fine assessed against Armstrong for violation of the injunction.
 
 
 20
 Armstrong contends that the amount of the royalty as well as the attorneys' fee was excessive. American, in its cross appeal, argues that the amounts of both royalty and attorneys' fees were inadequate.
 
 
 21
 In a contempt proceeding the determination of the amount of the remedial fine, as well as the allowance of attorneys' fees, rests largely within the discretion of the Court. We find no abuse of discretion here.
 
 
 22
 Counsel for American is allowed $2,500 for services rendered in appeal No. 20,194, for which amount judgment is entered against Armstrong.
 
 
 23
 It is therefore ordered that the judgment of the District Court be affirmed in each appeal. Costs in case number 20,194 are assessed against Armstrong; and costs in case number 20,229 are assessed against American.
 
 
 24
 Affirmed.